Bambach, J.
Heard on motion for a new trial.
The verdict in this case has been vigorously denounced as an assault upon plaintiff’s rights.
The case has had a checkered career. It has been four times tried in this court, resulting in two disagreements, a verdict for the plaintiff for approximately $10,000, and the present verdict for the defendant.
The judgment rendered upon the verdict for the plaintiff was reversed by the circuit court, upon grounds other than the weight of the evidence.
This history of the case should seem to indicate, either that the case is close upon the facts, or that it is, beset by some exceptional difficulty.
*582 The act charged against the defendant is, that its motorman drove a large box freight car, propelled by electric current, upon and against a one horse cart in which the plaintiff was seated, wlith force and violence and without giving him time and opportunity to avoid a collision. The negligence charged is of a positive character, namely, it is said to have been wrongful and willful. The freight ear is said to have been run against the cart with great force, without giving the driver time and opportunity to clear the track on which the freight car was being operated; that the motorman saw, and could by the exercise of ordinary care, have seen when the freight ear was seventy-five feet from the horse and cart, that the horse was frightened by the approach of the car and the noise it was making. and was backing towards and on to the street car track, and was beyond the control of the driver, and about to back the cart on which plaintiff was seated in front of the freight car; and that the defendant well knowing, and having the means of knowing, etc., that the freight car would run against and collide with the horse and cart, unless cheeked and slowed down, and having sufficient time, opportunity and means to stop the car, wrongfully and negligently ran and drove the car on and against the cart with great force, etc., without allowing the plaintiff time and opportunity to escape and prevent the collision; whereby he was thrown from the cart near the left front wheel of the car and had his arm crushed, necessitating its amputation.
The answer is a general denial of the facts stated as the cause of action; and charges further, that the injury complained of is the result of the negligence of the plaintiff and of persons other than the defendant.
A reply denies the allegation last aforesaid.
The plaintiff testified that for some thirty-five or forty feet the cart, in which he and a boy were at the time seated, was being backed by the horse, who had taken fright at the approaching freight car, up the track away from the car with one wheel on the inside of the rail, and that the motorman could easily have seen his predicament, but notwithstanding he did not stop the car, but ran it against the cart, and thus caused the injury.
The cart was in charge of James Dennison, who invited the plaintiff to a ride. Dennison knew that the horse was "a. *583 backer,” but there was no evidence of a direct nature that the plaintiff knew of this vice of the horse, but the evidence did show that he was an experienced teamster.
The motorman testified that he did not know of the perilous situation of the plaintiff, and had no intimation that he was in any danger, until he saw his head near the window of the vestibule. The vestibule was not provided with lights to the sides so as to permit of a lateral view by the motorman,' but this fact is not relied on as a cause contributing to the injury, and need not, therefore, be considered.
There were some eight witnesses who gave their account of the transaction. The testimony conflicts as is usual' in such eases, where excitement, haste, confusion and tragedy confuse the powers of perception and impair the memory. There was no reason to believe that any witness had willfully falsified. There is no evidence of physical conditions which would point with greater eertainity to the true situation and sequence of events. The imprint of the cart wheel' on the freight ear is not of that character.
Whether the accident resulted from the sudden turning and backing of the horse at the moment of time when the freight car, moving at the rate of about three and one-half miles an hour, passed the cart, so that the collision could not reasonably have been foreseen; or, whether., by the exercise of reasonable and ordinary care, the motorman might have stopped the car after seeing, the perilous situation of the plaintiff or after he should have seen it by the exercise of such care he could have averted the injury, may well be said to be within the realm of probability, from the evidence, if determined either way.
Therefore, different minds believing the one theory of the evidence, or the other, may well arrive at different conclusions. And this accounts for the disagreements and the conflicting verdicts.
In such case, the rule of the law is well understood and of constant application, which forbids the court from interfering with the verdict, where it is not clearly against the evidence. McGatrick v. Wason,. 4 O. S., 566.
Guided by this rule the verdict, upon this ground, is imvX~ nerable.
*584 The special charge No. 10 asked by defendant and given, said to the jury that it is not negligence if the motorman failed to stop or slacken the speed of the car, running at an ordinary speed, upon seeing the cart and horse standing at the side of' the track, the horse being uneasy and showing signs of fright, if a full grown man was sitting in the cart, and another full grown person was standing in the street holding the. horse by the head, and had full control of it, until the horse suddenly backed on the track in front of the approaching car.
The special charges asked by the defendant were not discussed. It seemed that no serious fault was found with them by opposing counsel, though my recollection is that they excepted to the giving of the specials and counsel for defendant excepted to the ruling upon those which were refused.
A review of this special charge satisfies me that it was error to give it.
It was for the jury to say whether the evidence proved that the horse backed the cart along the track in front of the car and partly upon the track, where he could and should have been seen by the motorman, as plaintiff claimed, or whether the horse suddenly backed on the track in front of the approaching car as claimed by the defendant.
The evidence on this point was in conflict, and in this dilemma the court says it is not negligence in one aspect of the case when two full grown persons had the horse under control until he suddenly backed on the track in front of the car. The very crux of the case was assumed. The charge was not qualified, if they should find the facts to be thus proven.
The charge assumes the fact to be as the defendant claimed it to be, and the jury so found. What would have been the verdict if this charge had not been given no one can say. Where an erroneous charge is given, it will be presumed that the jury was thereby influenced to the prejudice of the party against whom the error was committed. Larve v. Lehenan, 15 O. S., 179.
It is highly desirable that this case should be ended; but in face of the presumption of prejudice accruing to the defeated party by an erroneous charge, the motion for a new trial is granted.